IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KATRINA HARTLEY,** <br> **Plaintiff,** <br><br> v. <br><br> **THE BOEING COMPANY,** <br> **Defendant.** | **CIVIL ACTION** <br><br><br><br> **NO. 19-373** |

## MEMORANDUM OPINION

Plaintiff Katrina Hartley brings this suit against Defendant the Boeing Company, alleging that in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et. seq.* ("ADA") and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. §§ 951, *et seq.* ("PHRA"), Defendant impermissibly revoked her offer of employment based on the results of a medical examination. Defendant now moves for summary judgment. For the reasons that follow, Defendant's motion shall be denied.

**I. FACTS**

In March 2018, Plaintiff applied for a position as a firefighter/emergency medical technician with Defendant. On April 17, 2018, Defendant offered Plaintiff the job, contingent on her meeting certain pre-employment requirements, including passing a drug screening, background check, and medical screening.

In the process of completing her pre-employment requirements, Plaintiff disclosed to Defendant that she had been separated from the military on medical grounds and diagnosed with herniated discs. She was then contacted by a nurse affiliated with Defendant regarding the pre-employment health screening to ensure that she was medically able to perform the job. All candidates who receive an offer to become a Boeing Firefighter must first pass this medical screening. As part of that process, Plaintiff provided a form from her primary care doctor, Dr.

Ben Kochuveli, a general physician for the United States Department of Veteran Affairs. Kochuveli filled out the form on Plaintiff's behalf and indicated there were no restrictions on Plaintiff's work abilities.

Plaintiff also gave Defendant authorization to access her medical records for review. Hundreds of pages of medical reports were turned over, including extensive documentation from Plaintiff's chiropractic visits and neurodiagnostic visits, both for her back. Those documents show Plaintiff visited the chiropractor for pain management multiple times per week, including around the time when Plaintiff was applying for the job with Boeing. At times, Plaintiff "complain[ed] of continuous, sharp, shooting, and tightness discomfort in lower back," and "describe[d] that the discomfort increases with movement." Plaintiff also received an epidural shot for pain management on May 1, 2018.

On May 4, 2018, Plaintiff attended an examination performed by Herman Eason, a physician's assistant contracted by Boeing to provide onsite care. According to Eason, the results of the examination were "unremarkable." In addition to his examination with Plaintiff, Eason also reviewed all of Plaintiff's disclosed medical records. Eason testified that he was concerned based on Plaintiff's medical records showing ongoing chiropractic and medical treatment.

On May 25, 2018, Defendant informed Plaintiff that she was "not medically qualified" for the position and rescinded her offer. Defendant also sent Plaintiff a letter dated June 5, 2018, further explaining that it had "performed a medical review of your individual circumstances as they relate to your contingent offer of employment and . . . determined that we cannot place you in this particular position," and "encourage[d]" her to explore other employment opportunities with the company.

Plaintiff obtained a right to sue letter and now brings claims for disability discrimination pursuant to the ADA and PHRA.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might impact the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). "However, to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (internal punctuation omitted).

## III. DISCUSSION

Plaintiff asserts that Defendant violated the ADA and the PHRA by pulling her offer after conducting a medical exam. The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures [and] hiring. . . ." 42 U.S.C. § 12112(a) (2008). The PHRA provides, similarly, that it is "an unlawful discriminatory practice … [f]or any employer because of the … non-job related handicap or disability . . . of any individual or independent contractor, to refuse to hire or employ or contract with [such individual]." 43 Pa. C.S.A. § 955. The ADA and PHRA are "to be interpreted consistently, and . . . have the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012).

**A. Plaintiff's claim of discrimination**

Because Plaintiff has no direct evidence of discrimination, she must use the familiar "burden shifting" framework to establish her claim. *See McDonnell Douglas v. Green*, 411 U.S. 792, 804 (1973). To make out a prima facie case of discrimination under the ADA, Plaintiff must present evidence that she: (1) was disabled within the meaning of the ADA; (2) was otherwise qualified to perform the essential functions of the job; and, (3) suffered an adverse employment decision as a result of discrimination. *See Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). If Plaintiff makes that showing, the burden shifts to the Defendant to articulate a "legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If Defendant does so, the plaintiff "must be given the opportunity to prove by a preponderance of the evidence that the legitimate reasons proffered by defendant were not its true reasons, but rather, a pretext for discrimination." *Josey v. John R. Hollingsworth Corp.*, 996 F.3d 632, 637–38 (3d Cir.1993).

1. The prima facie case

    a. "Disabled"

The first issue thus is whether Plaintiff has sufficiently shown she was disabled as defined by the ADA. Disability under the ADA means:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1) (2008). Plaintiff makes no argument that she is actually disabled or has a record of an impairment. She argues exclusively that Defendant regarded her as disabled under Section (C) because it (mistakenly) believed that her past back injuries rendered her incapable of

performing the firefighter/EMT role.

The referenced "paragraph (3)" provides that "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to [adverse action] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* at § 12102(3).[1] A "[p]hysical or mental impairment" is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems[.]" 29 C.F.R. § 1630.2. Although "impairments that are transitory and minor" are not actionable under the "regarded as" prong, the ADA nevertheless provides that the "definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(3)-(4).

The "regarded as" definition of disability is thus notably broader than the definition of an actual disability. "[T]he definition of 'perceived impairment' . . . encompass[es] situation[s] where an employer assumes an employee has an impairment" that disqualifies the employee from a job; whether it actually was a permanent or limiting problem is irrelevant. *Equal Employment Opportunity Commission v. BNSF Railway Co.*, 902 F.3d 916, 924 (9th Cir. 2018); *cf. Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002) ("If for no reason whatsoever an employer regards a person as disabled—if, for example, because of a blunder in reading medical records, it imputes to him a heart condition he never had—and takes adverse action, it has violated the [ADA].").

In this case, taking all inferences in the Plaintiff's favor, the evidence shows that

---

[1] This provision was amended in 2008. *See Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 48 (3d Cir. 2017); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 188 n.17 (3d Cir. 2009). Prior caselaw requiring plaintiffs to show the defendant regarded them as being substantially impaired in a major life activity is thus now superseded by statute.

5

Defendant regarded Plaintiff as having a back problem that disqualified her from being a firefighter, i.e. it regarded her as have a "physiological … condition … affecting one or more body systems." 29 C.F.R. § 1630.2. The fact that Defendant may not have perceived Plaintiff to be disqualified from a broad range of jobs or impaired otherwise from major life activities has no bearing. The ADA specifically provides that "[a]n individual meets the requirement of 'being regarded as having such an impairment' . . . w*hether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C.§ 12102(3) (emphasis added). All that matters is whether Boeing perceived Plaintiff to have a physiological condition impacting one or more body systems, and, as explained above, Plaintiff produced sufficient evidence for a jury to find Defendant did. Under the "regarded as" prong, Plaintiff thus qualifies as disabled.

      *b. Qualified*

The ADA only covers those individuals "qualified to perform the essential functions of the job[.]" *Gaul*, 134 F.3d at 580. An individual is qualified if she "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2. Accordingly, courts employ a two-part test to determine whether an individual is "qualified": first, a court must consider whether the individual possesses the requisite skill and experience for the role; and second, the court must consider whether the individual can perform the essential functions of the position with or without an accommodation. *Gaul*, 134 F.3d at 580; 29 C.F.R. § Pt. 1630, App. ("The determination of whether an individual with a disability is 'qualified' should be made in two steps."). The determination is made "at the time of the employment decision." *Gaul*, 134 F.3d at 580 (internal quotation marks omitted).

Plaintiff introduced adequate evidence for a jury to conclude that she was qualified for the firefighter role. First, she possessed the requisite skills and experience for the role, given that Defendant offered her the position. *BNSF Ry.*, 902 F.3d at 924 (noting that employer could not "credibly" argue that employee was unqualified for the role where it made a "conditional offer of employment"). She also testified in her deposition as to her qualifications and previous experience in similar roles.

Second, Plaintiff introduced evidence from which a reasonable jury could conclude that she could perform the essential functions of the role without an accommodation. Her primary doctor found that she was capable of performing the job and did not need any accommodations. He signed a form, which was faxed to Defendant, affirming that.

Defendant responds that in the course of its own post-offer medical screening, in which it reviewed hundreds of pages of medical records from Plaintiff's doctors and conducted its own exam, it found Plaintiff could not perform the essential functions of the job, with or without an accommodation. It correctly points out that the ADA permits employers to "require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties" and "may condition an offer of employment on the results of such examination." 42 U.S.C. § 12112(d)(3). But that the ADA permits such examinations does not insulate from judicial review an employer's decisions based on those exams. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1009-10 (7th Cir. 2002) (reviewing challenge to employer's decision following an entrance examination); *Cook v. City of Philadelphia*, 94 F. Supp.3d 640, 644 (E.D. Pa. 2015) (same).

Specifically, the ADA provides that employers may rely on such exams only if: (1) "all entering employees are subjected to such an examination regardless of disability;" (2) the

7

information collected is kept confidential; and, (3) "the results of such examination are used only in accordance with this subchapter." 42 U.S.C. § 12112(d)(3). Neither party disputes that all firefighter applicants to Boeing are subject to a post-offer medical review, nor does Plaintiff argue that her information was not kept confidential. Only the third prong is at issue here.

Entrance examinations may not "screen out an employee or employees with disabilities," unless "the exclusionary criteria" are "job-related and consistent with business necessity, and performance of the essential job functions cannot be accomplished with reasonable accommodation." 42 C.F.R. § 1630.14(b)(3); *O'Neal*, 293 F.3d at 1010 (explaining that employers may not "use[] the results [of entrance exams] to discriminate against [employees] on the basis of a disability"). Plaintiff alleges that Defendant excluded her from the role because, based on the exam results, it mistakenly perceived her as having a back injury. And, the exclusionary criteria—her perceived back injury—was not "job-related and consistent with business necessity" because she was, in fact, capable of performing the role without an accommodation. The allegation, if proven true, states a plausible ground for relief. *Cf. Rinehimer*, 292 F.3d at 381 ("If for no reason whatsoever an employer regards a person as disabled—if, for example, because of a blunder in reading medical records, it imputes to him a heart condition he never had—and takes adverse action, it has violated the [ADA].").

As mentioned, Plaintiff's primary doctor signed off that she was capable of performing all job functions without an accommodation. And the physician's assistant, Herman Eason, that Defendant hired to evaluate Plaintiff remarked that Plaintiff "did not appear to have any physical disability or limitation" in the exam. In his deposition and documented in his report, Eason said "there were no findings that were abnormal.… Those exam findings were unremarkable. There was nothing there that alone gave me a particular concern." Eason, and the other medical

8

professionals on Boeing's team, claims that the source of concern was Plaintiff's medical records, which "led to obvious objective information that she was still actively treating [her back injury], obviously having active symptoms based on the treatment that was recommended and being provided … medication."

Eason ultimately sums up Defendant's medical review as, "I think where things were different for she and I ultimately was that the information that was reviewed and evaluated by those outside providers were things that had us concerned, but didn't have her concerned." Defendant thus rescinded her offer, despite affirmance from Plaintiff's treating doctor and Defendant's own in-person examination confirming that Plaintiff has a full, normal range of motion, because Plaintiff's records showed she still had some back pain and received treatment for it. A reasonable jury could find such a decision based in precisely the "myths, fears, stereotypes, and prejudices with respect to the disabled" that the regarded as prong is designed to root out. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144 (3d Cir. 1998) (en banc). Accordingly, Plaintiff introduced enough evidence from which a jury could conclude that Plaintiff was qualified to be a firefighter and that Defendant's reliance on the entrance examination to reach the contrary result was impermissible.

      *c. Causation*

The last element requires Plaintiff to show that she suffered an adverse employment action "because of" the employee's disability. *Deane*, 142 F.3d at 149. Plaintiff's employment offered was rescinded, meaning she suffered an adverse action. But evidence must also support a "a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Phila.,* 776 F.3d 181, 193 (3d Cir. 2015). To make this showing, Plaintiff can rely on showings such as allegations of "temporal proximity between the

9

two if unusually suggestive, . . . any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other [allegations] suggesting that the employer had a [discriminatory] animus when taking the adverse action." *Id.*

Here, the evidence of Defendant's explanation for why it rescinded her offer can support an inference of causation. Defendant pulled Plaintiff's offer on the ground that she was "not medically qualified" for the position—that is, it rescinded Plaintiff's offer "because of" her medical condition. But, as discussed above, Plaintiff presented evidence that Defendant's determination of her medical qualification was mistaken, and that, as a result, Defendant regarded her as disabled in violation of the ADA. Thus, Defendant pulled the offer "because of" its (erroneous) perception that Plaintiff was disabled. A reasonable jury could also find inconsistencies in Defendant's explanation for why it deemed her medically unqualified. Namely, Defendant's own physician's assistant evaluated Plaintiff in person and found no reason she would be unable to perform the job. Defendant then changed its mind once it looked at other records of Plaintiff's back. This switch could support a causal connection between Defendant's mistaken view of her medical condition and its decision to fire her. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255.[2]

2. Defendant's burden

Because Plaintiff made out her prima facie case, the burden of production now shifts to the Defendant to provide evidence of a "legitimate, nondiscriminatory reason for the employee's

---

[2] Plaintiff also alleges that Defendant violated the ADA because, if it did believe she was disabled, it was required to engage in an interactive process to find an accommodation for her. This argument fails. A plaintiff who is only regarded as disabled is not entitled to a reasonable accommodation. 42 U.S.C. § 12201(h) ("A covered entity ... need not provide a reasonable accommodation ... to an individual who meets the definition of disability in [the regarded as prong]"); *Kiniropoulos v. Northampton Cty. Child Welfare Serv.*, 606 F. App'x 639, 642 (3d Cir. 2015) ("[Plaintiff] was not entitled to a reasonable accommodation because he alleges that he was 'regarded as' having an impairment, not that he had such an impairment.").

rejection." *McDonnell Douglas*, 411 U.S. at 802.  It "need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

Defendant's stated nondiscriminatory reason for refusing to hire Plaintiff is that she "posed a direct threat and/or harm to herself and others due to the extreme physical requirements of the Boeing Firefighter position in transporting personnel and transporting and operating equipment."  This can be a legitimate reason for refusing to hire her under the ADA.  29 C.F.R. § 1630.2(r).  It requires showing Plaintiff would pose "a significant risk of substantial harm to the health or safety of the individual" that cannot be managed through reasonable accommodation. *Id.*  The determination must be based on an "individualized assessment" using "reasonable medical judgment."  *Id.*  Direct threat analysis is a "rigorous" inquiry.  *Doe v. Cty. of Centre, PA*, 242 F.3d 437, 448 (3d Cir. 2001).  The factors to be considered are:

(1) The duration of the risk;

(2) The nature and severity of the potential harm;

(3) The likelihood that the potential harm will occur; and

(4) The imminence of the potential harm.

*Id.*; *see also Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002).

Defendant alleges that the highly physical nature of the job, which may require carrying people and large hoses up and down stairs while wearing heavy equipment, would be dangerous for a person with back problems to perform.  It could, Defendant alleges, result in Plaintiff further injuring her back and putting others at risk if that were to happen in the midst of an emergency.  And Defendant submitted a medical report form an outside expert assessing her

11

medical records and concluding Plaintiff's back could pose problems as a firefighter. Even reading in the light most favorable to Plaintiff, this is evidence from which a reasonable trier of fact could conclude that, while Plaintiff may be physically capable of performing the job of a firefighter, there is still a risk that her back problems could flair up and put herself or others in danger.

There is ample evidence that Plaintiff has received various forms of ongoing treatment for back problems since 2015. A reasonable trier of fact could conclude from the years of treatment that the risk is long in duration. Likewise, given that Plaintiff's job requires her to be a first responder in the event that an emergency arises at Boeing's facilities, severe harm could occur were her back to flair up. Plaintiff's back injury was already exacerbated once from a workplace injury; a jury could conclude that having to lift heavy items repeatedly puts her at a serious risk of injuring herself further. *See Chevron*, 536 U.S. at 74–75 (holding that threat-to-self is a valid reason to reject an applicant). It also could divert other first responders' resources away from the emergency on hand to dealing with Plaintiff, putting the firefighters and persons in need of help at further risk. A jury could thus conclude the threat is severe. Because there is evidence that Plaintiff's condition is of an unlimited duration and capable of causing serious harm, a jury can conclude that injury is likely to occur. *Darnell v. Thermafiber, Inc.*, 417 F.3d 657, 661 (7th Cir. 2005). And finally, Defendant claims the threat Plaintiff poses impacts the day-to-day operations as a firefighter. The threat is thus imminent and could arise at any time.

Although the burden on defendants to propose a legitimate, nondiscriminatory reason for rejecting the plaintiff is generally quite light, the direct threat standard is a demanding one. *See Doe*, 242 F.3d at 449–51. But Defendant introduced enough medical records and an outside report to raise a triable issue of fact as to whether, even if Plaintiff's back injury does not prevent

her from doing the job, it may still carry enough risk as to pose a direct threat.

    3.  Pretext

If the jury were to accept Plaintiff's prima facie case and reject the direct threat explanation, that would leave Defendant with no legitimate, nondiscriminatory reason proposed for why it rejected Plaintiff. Although the burden of persuasion always remains with Plaintiff, a plausible prima facie case and fact issue on the legitimate reason is alone enough to deny Defendant summary judgment. *See, e.g.*, *Bender v. Norfolk Southern Corp.*, 994 F. Supp. 2d 593, 613 (M.D. Pa. 2014) (denying summary judgment because fact issue existed for defendant's direct threat defense).

But assuming the jury does accept Defendant's explanation that Plaintiff presented a direct threat, Plaintiff still must then be given a chance to show that Defendant did not truly view her as a direct threat, but instead is just using that explanation as a pretext for discrimination. *Josey*, 996 F.3d at 638. To do so, the plaintiff must point to some evidence that would allow the factfinder to "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

Much of the evidence that Plaintiff introduced to show she was qualified to perform the job also could convince a factfinder that she would not pose any threat. Plaintiff can point to the discrepancy between Defendant's physician's assistant finding she had no issues in her exam but then concluding she would be a risk anyways. *See Josey*, 996 F.3d at 638–39 (listing employer's credibility as a factor that can raise an inference of pretext precluding summary judgment). And she can point to the fact that Defendant's independent expert never observed Plaintiff in person. A reasonable jury could look at the evidence and conclude that Defendant did not genuinely

believe Plaintiff was a threat, but instead simply did not want to hire her due to its perception of her back injury, running afoul of the ADA. *BNSF Railway Co.*, 902 F.3d at 924. Defendant's motion for summary judgment is thus denied.

### B. Plaintiff's bankruptcy proceedings

Defendant finally claims that Plaintiff failed to properly disclose this lawsuit in her bankruptcy proceedings and should thus be judicially estopped from pursuing her claim. Plaintiff filed for bankruptcy in June 2018, and a Final Decree ending the proceeding was entered in May 2019. Under Section 541(a) of the Bankruptcy Code, the bankruptcy estate includes all of the debtor's assets, including potential and unfiled legal claims. 11 U.S.C. §§ 541(a), 1306(a). Plaintiff's estate thus included the instant ADA case, which became a potential suit before she filed her bankruptcy petitions and schedules. And this suit was actually filed well before the bankruptcy was finalized. As such, it should have been listed in the estate and schedules. While Plaintiff did not include it in the schedules, she explained in her deposition that she raised the claims against Defendant in a Rule 341 hearing with the trustee present.

Because Plaintiff did not include the claim in her bankruptcy schedule, Defendant argues she should be judicially estopped from pursuing it. Judicial estoppel is a judge-made doctrine sometimes referred to as the "doctrine against the assertion of inconsistent positions." *Ryan Operations G.P. v. Forrest Paint Co., Inc.*, 81 F.3d 355, 358 (3d Cir. 1996). The Third Circuit has applied judicial estoppel in this setting, holding that failure to disclose the existence of a claim is tantamount to saying no claim exists. That means when the plaintiff later brings the claim, it is asserting an inconsistent position. *See id.*

But asserting an inconsistent position not does automatically trigger the application of judicial estoppel; the "intentional self-contradiction" must be "used as a means of obtaining

14

unfair advantage." *Scarano v. Cent. R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953). In other words, the inconsistent position must be "attributable to intentional wrongdoing." *Ryan Operations*, 81 F.3d at 362. And the "mere fact of nondisclosure" is not enough to trigger an inference of bad faith. *Id.* No evidence of intentional wrongdoing exists in this case. Although the disclosure was not properly made in the schedule, Plaintiff did disclose the existence of the claim to a trustee in her Rule 341 meeting with the trustee. This does not "support a finding that [she] sought to conceal the claims deliberately." *Id.* at 364. Plaintiff's behavior is thus distinguishable from the behavior of other plaintiffs whose claims were judicially estopped, such in *Oneida Motor Freight*, when there was evidence in the record from which the court could reasonable infer deliberate manipulation to hide large sums of money. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.1, 418 (3d Cir. 1988); *Ryan Operations*, 81 F.3d at 363 (distinguishing *Oneida* on that ground). Because the record does not support a finding of bad faith, this court declines to estop Plaintiff's claims.

IV. CONCLUSION

Plaintiff points to material issues of disputed facts over whether Defendant violated the ADA when it rescinded her offer of employment. For the foregoing reasons, Defendant's motion will be denied.

September 30, 2019          BY THE COURT:

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**